# UNITED STATES DISTRICT COURT
## DISTRICT OF DISTRICT OF COLUMBIA

PANGEA LEGAL SERVICES
391 Sutter Street, Suite 500
San Francisco, CA 94108,

MIJENTE SUPPORT COMMITTEE
734 West Polk Street
Phoenix, AZ 85007,

JUST FUTURES LAW,
95 Washington Street, Suite 104-149
Canton, MA 02021,

       *Plaintiffs*,

       v.

U.S. CITIZENSHIP AND
IMMIGRATION SERVICES,
20 Massachusetts Avenue NW
Room 4210, MS 2120
Washington, D.C. 20529,

U.S. DEPARTMENT OF HOMELAND SECURITY,
245 Murray Lane, S.W.
Washington, D.C. 20528,

and

U.S. IMMIGRATION
AND CUSTOMS ENFORCEMENT,
500 12th Street SW
Washington, D.C. 20536,

       *Defendants*.

Civil Action No. 1:24-cv-2809

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to enforce the public's rights to records of U.S. Citizenship and Immigration Services' ("USCIS"), U.S. Department of Homeland Security's ("DHS"), and U.S. Immigration and Customs

Enforcement's ("ICE") use of Artificial Intelligence or computer algorithms in agency operations and decision-making.

2.      Artificial intelligence (AI) refers to a set of machine-based technologies that can make predictions, recommendations, or decisions influencing real or virtual environments.

3.      DHS and its subagencies, including USCIS and ICE, are racing to adopt AI at an alarming rate. These agencies use AI and other algorithms to make a range of decisions, including those about asylum and detention, which impact fundamental human rights. In response to the rise of AI and its use within the federal government, executive agencies, including DHS itself, have released policies in support of civil rights and privacy and against systemic bias and discrimination, promoting the responsible use of AI in agency operations. But DHS, USCIS, and ICE appear to be failing to meet the minimum requirements; they have not informed the public as to whether they have taken necessary bias-mitigation measures, conducted accuracy assessments or provided redress processes to immigrants who may be negatively impacted by AI. This lack of transparency coupled with DHS's fast-tracking of AI raises grave concerns. It threatens to exacerbate existing discriminatory tendencies in the immigration system, and to harm both individuals and communities.

4.      On July 26, 2024, July 27, 2024, and August 14, 2024, Plaintiffs Pangea Legal Services, Mijente Support Committee, and Just Futures Law, nonprofit civil and human rights organizations, submitted FOIA requests to Defendants USCIS, DHS, and ICE seeking records related to their use of AI and other algorithms, including contracts, policies, privacy or AI impact assessments, and any verification of the accuracy, reliability, and lack of bias of such systems (the "FOIA Requests").

5.      To date Defendants have neither provided Plaintiffs with substantive responses nor produced any records in response to Plaintiffs' FOIA requests. Defendants' failure to disclose and produce the requested records violates the FOIA. Because of Defendants' disregard for these requirements, important information about the nature of Defendants' use of AI remains hidden.

6.      Plaintiffs now bring this action to obtain the information to which they are statutorily entitled.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this matter under FOIA, 5 U.S.C. § 552(a)(4)(B), and as a federal question under 28 U.S.C. § 1331.

8.      Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

9.      Because Defendants have failed to comply with the applicable time-limit provisions of FOIA, Plaintiffs are deemed to have exhausted their administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i) and are now entitled to judicial action enjoining the agency from continuing to withhold agency records and ordering the production of agency records improperly held.

## PARTIES

10.      Pangea Legal Services ("Pangea") is a nonprofit organization that provides low-cost and free legal services to immigrants in removal proceedings. In addition to direct legal services, Pangea also advocates on behalf of the immigrant community through policy advocacy, education, and legal empowerment efforts. Pangea has previously been involved in several efforts to obtain and disseminate information about USCIS and DHS adjudications of immigration applications, including regarding USCIS' identification of "gang indicators" to flag particular asylum applications, and DHS's use of technology in its alternative to detention ("ATD") programs. Pangea's lawyers and organizers support clients who have pending applications before USCIS, ICE, and other DHS components, and have an interest in knowing how AI is used in adjudicating their cases. Pangea is established under the laws of and headquartered in California.

11.      Mijente Support Committee ("Mijente") is a national nonprofit organization that coordinates and organizes with its members in several states to address issues relating to immigration enforcement and Latinx political participation. Founded by community organizers,

its focus is on developing and sparking social change with respect to immigration and other social justice issues in the Latinx community and beyond. Among the campaigns run by Mijente is #NoTechForICE, launched in 2019 (https://notechforice.com/). Mijente is established under the laws of and headquartered in Arizona.

12.     Plaintiff Just Futures Law (JFL) is a nonprofit organization that works in partnership with immigrant and racial justice organizers and base-building groups to develop legal and advocacy strategies aimed at disrupting criminalization and deportation; file litigation aligned with organizing; and build a political home for lawyers and legal workers who center directly-impacted communities in the immigrants' rights movement. JFL disseminates information about the immigration system to the public in accessible ways and is a leader in providing training and support for legal practitioners, community-based organizations, and community members. JFL provides expert information and community-based education on ICE tactics, including surveillance practices, and possible legal and policy remedies. JFL is established under the laws of Delaware and headquartered in Washington, D.C.

13.     Defendant DHS is a department of the executive branch of the United States government and an agency within the meaning of 5 U.S.C. § 552(f). DHS is responsible for enforcing federal immigration laws. DHS is comprised of multiple component agencies, including USCIS and ICE.

14.     Defendant USCIS is a component agency of DHS and an agency within the meaning of 5 U.S.C. § 552(f)(1). USCIS oversees lawful immigration to the United States.

15.     Defendant ICE is a component agency of DHS and an agency within the meaning of 5 U.S.C. § 552(f)(1). ICE enforces immigration and customs law and is responsible for the detention and removal of immigrants.

16.     Upon information and belief, Defendants DHS, USCIS, and ICE have custody and control over the records Plaintiffs seek to make publicly available under 5 U.S.C. § 552(a)(2).

**STATEMENT OF FACTS**

**Background**

17.     Within the federal government there is perhaps no other sector racing to adopt AI more than U.S. migration and defense agencies. DHS, in conjunction with corporations, has aggressively pushed the idea that AI will make immigration processing more efficient, more objective, and less biased. DHS has awarded lucrative contracts to tech companies for AI technology.[1] AI tools are now pervasive at DHS—agency decision makers use AI to inform a range of decisions that impact people's lives, including in the adjudication of immigration and asylum benefits.[2] Just this year, DHS released an AI roadmap, detailing how AI will be used in its core missions.[3]

18.     A growing number of studies, including studies by the government agency responsible for creating standards for AI, recognize that AI has in many instances worsened discrimination.[4] In light of such concerns, recently passed law, executive orders, and agency memoranda require that DHS adopt key steps around the responsible use of AI within the agency and take the lead in establishing standards across the federal government.[5] Most significantly, in

---

[1] DHS is contracting with OpenAI, Anthropic, Meta, Microsoft, Google and Amazon to build and host its AI technologies. *See* Cecelia Kang, *The Department of Homeland Security Is Embracing A.I.,* N.Y. Times, Mar. 18, 2024, https://www.nytimes.com/2024/03/18/business/homeland-security-artificial-intelligence.html.

[2] Just Futures Law & Mijente, *Automating Deportation: The Artificial Intelligence Behind The Department of Homeland Security's Immigration Enforcement Regime* (June 2024), https://mijente.net/wp-content/uploads/2024/06/Automating-Deportation.pdf ("Automating Deportation Report").

[3] *Department Of Homeland Security AI Roadmap 2024,* U.S. Dep't of Homeland Sec. (2024), https://www.dhs.gov/sites/default/files/2024-03/24_0315_ocio_roadmap_artificialintelligence-ciov3-signed-508.pdf.

[4] *There's More to AI Bias Than Biased Data*, NIST Report Highlights, Nat. Inst. of Standards and Tech., U.S. Dep't of Commerce (Mar. 16, 2022), https://www.nist.gov/news-events/news/2022/03/theres-more-ai-bias-biased-data-nist-report-highlights; Brianna Scott, Jeanette Woods, Ailsa Chang, *How AI could perpetuate racism, sexism and other biases in society*, NPR, Jul. 19, 2023, https://www.npr.org/2023/07/19/1188739764/how-ai-could-perpetuate-racism-sexism-andother-biases-in-society; Shin, D., Zaid, B., Biocca, F., Rasul, A., In Platforms We Trust? Unlocking the Black-Box of News Algorithms through Interpretable AI, Journal of Broadcasting & Electronic Media, 66(2), 235–256 (2022), https://doi.org/10.1080/08838151.2022.2057984.

[5] *FACT SHEET: Biden-Harris Administration Executive Order Directs DHS to Lead the Responsible Development of Artificial Intelligence,* U.S. Dep't of Homeland Sec. (Oct. 30, 2023),

March 2024, the Office of Management and Budget (OMB) released a binding memorandum to all federal agencies, "Advancing Governance, Innovation, and Risk Management for Agency Use of Artificial Intelligence" (herein "OMB memo").[6]

19.     The OMB memo provides a detailed and lengthy risk assessment framework for "rights-impacting AI"[7] to protect access to critical services, protect equitable access to government services, reduce algorithmic bias, and protect civil rights from potential AI harms. DHS has published an "AI Inventory" purporting to provide "an inventory of non-classified and non-sensitive Artificial Intelligence (AI) use cases" within DHS and its sub-agencies.[8] That inventory reveals that DHS, USCIS, and ICE are developing and employing various "rights-impacting AI" technologies.[9] These include the use of AI to scrutinize people applying for immigration benefits, such as asylum.[10]

20.     DHS, USCIS and ICE's use of AI raises serious concerns. First, Defendants have failed to provide crucial information to the public as to how these programs function or whether the agency has taken steps to prevent biased or discriminatory outcomes and ensure accuracy. Furthermore, there is no evidence that these agencies are notifying individuals of the use of AI in the adjudication of their benefits or providing a process to seek redress against adverse AI

---

https://www.dhs.gov/news/2023/10/30/fact-sheet-biden-harris-administration-executive-order-directs-dhs-lead-responsible.

[6] *See* Shalanda D. Young, *Memorandum for the Heads of Executive Departments and Agencies: Advancing Governance, Innovation, and Risk Management for Agency Use of Artificial Intelligence,* Office of Management and Budget (Mar. 28, 2024), https://www.whitehouse.gov/wp-content/uploads/2024/03/M-24-10-Advancing-Governance-Innovation-and-Risk-Management-for-Agency-Use-of-Artificial-Intelligence.pdf.

[7] *Id.* at 29 (defining "Rights-Impacting AI" to include technologies that affect "1. Civil rights, civil liberties, or privacy, including but not limited to freedom of speech, voting, human autonomy, and protections from discrimination, excessive punishment, and unlawful surveillance; 2. Equal opportunities, including equitable access to education, housing, insurance, credit, employment, and other programs where civil rights and equal opportunity protections apply; or 3. Access to or the ability to apply for critical government resources or services, including healthcare, financial services, public housing, social services, transportation, and essential goods and services.").

[8] *Artificial Intelligence Use Case Inventory,* U.S. Dep't of Homeland Sec., https://www.dhs.gov/data/AI_inventory, (last accessed August 28, 2024).

[9] *Id.*

[10] *Id.*

decisions, as required by the OMB memo. Given the lack of transparency and of any redress mechanisms, Defendants' fast-tracking of AI technologies threatens to worsen the existing discriminatory practices of the immigration system, while also violating civil and privacy rights of immigrant communities.

**Plaintiffs' FOIA Requests and Defendants' Response**

21.     On July 26, 2024, Plaintiffs submitted five FOIA requests to the USCIS FOIA Office in Washington, D.C. (via USCIS' online portal) seeking records of the agency's use of AI in its operations. *See* Exhibits 1-5.

22.     The first FOIA request ("Request 1," attached herein as Exhibit 1) sought the following records:

> (1) Records reflecting any lists or inventories that the agency maintains to track the AI tools or programs it employs in its operations; (2) Records reflecting what data is used to train AI tools employed in the adjudication of Applications; (3) Records on policy, procedures, training and guidance on the use of AI tools employed in the adjudication of applications; (4) Contracts with any third parties to develop, maintain or otherwise support USCIS' use of AI tools employed in the adjudication of applications; (5) Records concerning immigration-related programs which will adopt Pangea Text analysis and the current status of such programs; (6) Records concerning the use of AI tools for the detection and measurement of behavior and/or emotions of applicants for immigration relief or benefits, including but not limited to AI tools that analyze online and social media posts and activity; (7) Records reflecting whether USCIS shares or provides access to information generated using AI tools employed in the adjudication of applications to other government agencies; (8) Records concerning any Privacy Impact Assessment (PIA) or AI Impact Assessment (AIA) (as required by the OMB memo) of AI tools employed in the adjudication of applications; (9) Records indicating that the agency has sought a waiver of the AIA requirement; (10) Records indicating any agency consultation with affected communities and the public on the use of AI tools in immigration applications; (11) Records indicating any redress policy, procedure, and/or form where the use of AI resulted in an adverse decision; (12) Records reflecting any monitoring or testing for bias in relation to the use of AI tools; (13) Any audits or other records that describe validation, accuracy, or reliability in relation to the use of AI tools; (14) Records indicating any policy, process or form to provide notice that USCIS will use AI tools in adjudication of individuals' immigration applications; (15) Records indicating any policy, process, or form to provide individuals the opportunity to opt-out of use of AI; (16) Records reflecting any determination or assessment by USCIS regarding whether use of any AI tools in adjudication of immigration applications should be classified as "rights-impacting" or "safety-impacting" under the OMB memo.

23.     The other requests to USCIS (Exhibits 2-5) were very similar to Request 1, but each of the four subsequent requests focused specifically on a particular AI tool or category of tool the

agency is using or developing. In those subsequent requests, Plaintiffs sought similar types of records pertaining to USCIS's use of Automated Text Analytics ("ATA") (Exhibit 2); the use and development of programs employing Generative AI ("GenAI") (Exhibit 3); the use of the Fraud Detection and National Security – Data System NextGen ("FDNS-DS NextGen") (Exhibit 4); and the proposed "Predicted to Naturalize" tool (Exhibit 5).

24.     On July 27, 2024, Plaintiffs submitted a FOIA request (Exhibit 6) (hereinafter the "ICE request") to the ICE FOIA Office in Washington, D.C. (via ICE's online portal). The ICE request sought similar records as in Request 1 (Exhibit 1), but specifically focused on records pertaining to ICE's use of "Hurricane Score" flight risk assessments as part of ICE's Intensive Supervision Appearance Program ("ISAP").

25.     On August 14, 2024, Plaintiffs submitted a FOIA request (Exhibit 7) (hereinafter the "DHS request") to the DHS FOIA Office in Washington, D.C. (via USCIS' online portal). The DHS request sought nearly identical records to those requested in Request 1 (Exhibit 1), except that it sought records held by DHS.

26.     On July 30, 2024, USCIS acknowledged receipt of each of the five requests, assigned control numbers to each of the requests, and invoked a 10-day extension to the 20 working-day deadline for USCIS to provide a substantive response to the requests. USCIS also granted Plaintiffs' requests for a fee waiver and denied their requests for expedited processing for each of the five requests. Plaintiffs have not received any further communications from USCIS relating to these five USCIS requests.

27.     Plaintiffs' first request to USCIS (Exhibit 1) was assigned control number COW2024005573. *See* Exhibit 8. Plaintiffs' second request to USCIS (Exhibit 2) was assigned control number COW2024005574. *See* Exhibit 9. Plaintiffs' third request to USCIS (Exhibit 3)

was assigned control number COW2024005575. *See* Exhibit 10. Plaintiffs' fourth request to USCIS (Exhibit 4) was assigned control number COW2024005576. *See* Exhibit 11. Plaintiffs' fifth request to USCIS (Exhibit 5) was assigned control number COW2024005577. *See* Exhibit 12.

28.     On August 1, 2024, ICE acknowledged receipt of the ICE request (Exhibit 6), assigning case number 2024-ICFO-48727 to the request, and invoking a 10-day extension to the 20 working-day deadline for ICE to provide a substantive response to the FOIA request. *See* Exhibit 13. ICE failed to acknowledge Plaintiffs' requests for a fee waiver and for expedited processing for the ICE request. Plaintiffs have not received any further communications from ICE relating to the ICE request.

29.     On August 29, 2024, via portal notification, DHS acknowledged receipt of the DHS request (Exhibit 7), assigned case number 2024-HQFO-02662 to the request, and granted Plaintiffs' request for a fee waiver. *See* Exhibit 14. The Plaintiffs' request for expedited processing remains pending. On September 4, the DHS Privacy Office met with Plaintiffs by videoconference and asked Plaintiffs to narrow their request and identify the specific DHS offices to search. DHS also emailed Plaintiffs a letter asking them to narrow their request. *See* Exhibit 15. On September 10, Plaintiffs sent a letter via email narrowing their request and identifying the specific DHS offices to search. Plaintiffs narrowed their request to the following records:

> (1) Records of determinations by DHS regarding whether use of any AI tools by DHS or its component agencies should be classified as "rights-impacting" or "safety-impacting" under Section 5 of OMB Memorandum M-24-10; (2) Correspondence regarding whether use of any AI tools by DHS or its component agencies should be classified as "rights-impacting" or "safety-impacting" under Section 5 of OMB Memorandum M-24-10; (3) Records regarding requests for or grants of extensions to comply with Section 5 of OMB Memorandum M-24-10; (4) Records regarding requests for or grants of waivers of minimum risk management practices to comply with Section 5 of OMB Memorandum M-24-10; (5) Correspondence with external agencies, including National Institute of Standards and Technology (NIST), about USCIS use of AI and machine learning tools; (6)

Internal DHS policies or other written guidance regarding the use of AI tools by DHS or its component agencies; (7) Contracts with any third parties to develop, maintain or otherwise support USCIS' use of AI tools.

*See* Exhibit 16. Other than an acknowledgment, Plaintiffs have not received any further communications from DHS relating to the DHS request.

**Exhaustion of Administrative Remedies**

30.    As of the date of this Complaint, Defendants have failed to (a) notify Plaintiffs of a final determination regarding Plaintiffs' FOIA requests, including the scope of responsive records Defendants intend to produce or withhold and the reasons for any withholdings; or (b) produce the requested records or demonstrate that the requested records are lawfully exempt from production.

31.    Through Defendants' failure to respond to Plaintiffs' FOIA requests within the time period required by law, Plaintiffs have constructively exhausted their administrative remedies and seek immediate judicial review.

**CLAIMS FOR RELIEF**

**COUNT I**

**Violation of FOIA, 5 U.S.C. § 552**
**Failure to Conduct Adequate Searches for Responsive Records**

32.    Plaintiffs repeat the allegations in the foregoing paragraphs and incorporate them as though fully set forth herein.

33.    Plaintiffs properly requested records within the possession, custody, and control of Defendants.

34.    Defendants are agencies subject to FOIA, and they must therefore make reasonable efforts to search for requested records.

35.    Defendants have failed to promptly review agency records for the purpose of locating those records that are responsive to Plaintiffs' FOIA requests.

36.     Defendants' failure to conduct an adequate search for responsive records violates FOIA and applicable regulations.

37.     Plaintiffs are therefore entitled to injunctive and declaratory relief requiring Defendants to promptly make reasonable efforts to search for records responsive to Plaintiffs' FOIA requests.

## COUNT II

### Violation of FOIA, 5 U.S.C. § 552
### Wrongful Withholding of Non-Exempt Responsive Records

38.     Plaintiffs repeat the allegations in the foregoing paragraphs and incorporate them as though fully set forth herein.

39.     Plaintiffs properly requested records within the possession, custody, and control of Defendants.

40.     Defendants are agencies subject to FOIA, and they must therefore release in response to a FOIA request any non-exempt records and provide a lawful reason for withholding any materials.

41.     Defendants are wrongfully withholding non-exempt agency records requested by Plaintiffs by failing to produce non-exempt records responsive to its FOIA requests.

42.     Defendants are wrongfully withholding non-exempt agency records requested by Plaintiffs by failing to segregate exempt information in otherwise non-exempt records responsive to Plaintiffs' FOIA requests.

43.     Defendants' failure to provide all non-exempt responsive records violates FOIA and applicable regulations.

44.     Plaintiffs are therefore entitled to declaratory and injunctive relief requiring Defendants to promptly produce all non-exempt records responsive to its FOIA requests and provide indexes justifying the withholding of any responsive records withheld under claim of exemption.

## REQUESTED RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court:

a.       Declare that Defendants' failure to disclose the records responsive to Plaintiffs' requests is unlawful;

b.       Order Defendants' to promptly conduct a thorough search for all responsive records;

c.       Order Defendants to expeditiously process and release all responsive records, and enjoin Defendants from improperly withholding records;

d.       Award Plaintiffs reasonable attorneys' fees and other litigation costs incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

e.       Grant such other relief as the Court may deem just and proper.


Dated: October 3, 2024                          Respectfully submitted,


                                                /s/ Sejal Zota
                                                Sejal Zota (D.C. Bar. No. NC020)
                                                Dinesh McCoy* (*pro hac vice*
                                                application forthcoming)
                                                Just Futures Law
                                                95 Washington Street, Suite 104-149
                                                Canton, MA 02021
                                                Telephone: (617) 812-2822
                                                sejal@justfutureslaw.org
                                                dinesh@justfutureslaw.org

                                                *Attorneys for Plaintiffs*